**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NIGHTINGALE & ASSOCIATES, LLC, et al.,

Plaintiffs,

v.

S. DOUGLAS HOPKINS, et al.,

Defendants.

Civ. Docket No. 07-4239 (FSH)

**OPINION & ORDER**

November 5, 2008

This matter comes before the Court upon Plaintiffs' Motion to Dismiss five of Defendants' Counterclaims against the Plaintiffs: Counts One (Minority Shareholder Oppression), Three (Wrongful Misconduct), Four (Fraud and Misrepresentation), Seven (Retaliation), and Fourteen (Wrongful Termination) of the defendants' counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). This Court has considered the parties' written submissions pursuant to Federal Rule of Civil Procedure 78.

## I. Factual Background[1]

This matter arises out of a lengthy dispute among the current and former members of Nightingale & Associates ("Nightingale"), a Delaware limited liability company that provides financial advisory services to troubled companies worldwide. Plaintiffs are Nightingale, and its

[1] The following facts, except where otherwise noted, are not in dispute.

current members Pierre Benoit ("Benoit"), Michael R. D'Appolonia ("D'Appolonia"), Dennis Duckett ("Duckett"), Howard Hoffmann ("Hoffmann") and James Niedhart ("Neidhart"). Plaintiffs have asserted various causes of action arising out of their past business relationship with Defendants, and Defendants have asserted several counterclaims. Defendants are S. Douglas Hopkins ("Douglas"), a former member of Nightingale, S. Douglas Hopkins & Associates, Inc. ("DHA"), a Nevada Corporation conducting business out of New Jersey as Douglas' corporate entity, and Kestrel Consulting, LLC ("Kestrel"), a New Jersey Corporation also affiliated with Douglas and a competitor of Nightingale. Plaintiffs sued in this district on diversity of citizenship grounds pursuant to 28 U.S.C. § 1332(a). Defendants argue that New Jersey law applies to the counterclaims that are the subject of this motion, while Plaintiffs contend that the laws of Delaware and Connecticut should apply.

Nightingale is a limited liability corporation incorporated in Delaware with its principal place of business in Stamford, Connecticut. While Nightingale had been in business since 1975, the current LLC corporate form was adopted in 1997 by members Stephen J. Hopkins (Douglas' father) ( "Stephen"), Douglas Hopkins, Benoit, D'Appolonia, Dowd and Hoffman.[2] The members entered into an Operating Agreement to govern their relationship, which was amended in May, 2001 and again in September, 2002.

Douglas Hopkins performed services on behalf of Nightingale pursuant to a Services Contract through his own closely-held corporation, DHA.[3] Douglas had provided contract

[2] Plaintiffs Duckett and Neidhart later became members of Nightingale. Compl. ¶18.

[3] Stephen Hopkins also performed services for Nightingale pursuant to a services contract through his own privately held corporation, Stephen Hopkins and Associates ("SHA").

services since 1978 and worked exclusively through Nightingale since 1987, relying solely on this relationship for income until his departure from the company in 2004.

The current dispute regarding Douglas' exit from Nightingale is closely related to a previous dispute regarding Stephen Hopkins' departure from the business. Prior to its conversion to a limited liability company, Stephen J. Hopkins owned 80% of the shares of Nightingale. After the conversion (in 1997), Stephen retained 25% of the shares and remained the Managing Member. Under the original Operating Agreement, 75% of members were needed to approve any business decision, and thus Stephen retained a blocking vote.

In 1999, members of Nightingale began negotiations to modify the Operating Agreement and to set the terms and conditions for Stephen Hopkins' retirement.[4] Stephen did not wish to set a definite end-date and attempted to secure a favorable retirement package. After much negotiation, a revised retirement agreement was signed and accepted on May 14, 2001, which provided for partial year-end distributions for the following two years, and a 'flexible' anticipated retirement date of December 31, 2002.

On May 14, 2001, an Amended and Restated Operating Agreement for Nightingale was executed and unanimously approved by all Members, including Stephen and Douglas Hopkins. The Amended Operating Agreement reallocated shares among members, changed the required vote for major business decisions to 60% (thus eliminating Stephen's blocking vote), and modified the agreement to state that "if any amendment would change the relative rights and

[4] The parties dispute the circumstances and negotiations surrounding Stephen's retirement. Plaintiffs allege that Stephen initially informed Nightingale in early 2000 that he would retire by December 31, 2002. Pls.'s Br. at 5. They allege that Stephen's initial retirement proposal was "outlandish," and a dispute arose over the next several months regarding his retirement and other issues.

interests of any Member in Distributable Cash or Liquidation Proceeds, then the consent of the affected Member shall be required in order for such amendment to be effective with respect to such Member." Countercl. ¶ 34. The May 2001 amendments also modified the provision for removal of members, adding a provision for removal "other than for cause" and mandating a six month notice period to the member being removed.

Defendants allege that in the ensuing months Plaintiffs began acting oppressively towards Stephen and Douglas, specifically by excluding Stephen from projects, engaging in age discrimination against Stephen and interfering with Douglas' management and business relations. Defendants allege that in June, 2002, Hoffmann threatened Douglas with repercussions if Stephen did not retire by the end of 2002.

In September, 2002, Stephen sent Hoffman (then Managing Member) a letter stating that he did not intend to retire at the end of 2002. In response, an amendment was passed (over Stephen and Douglas' objection) which replaced the former provision for removal "other than for cause" by providing for reduced distribution and shorter notice.[5] Defendants allege that another member of Nightingale, Kevin I. Dowd, told Douglas to inform Stephen that if he sought counsel to oppose Plaintiffs, they would remove Stephen for cause and he would then receive no post-removal distributions.

On November 1, 2002, Plaintiffs sent Stephen a Notice of Removal. Shortly thereafter, Stephen filed suit in the United States District Court for the District of New Jersey alleging minority shareholder oppression, violation of New Jersey Law Against Discrimination, breach of

[5] Removal "other than for cause" under the May 2001 amendments would have triggered a higher payout than under the retirement letter-agreement. The September 2002 amendment to the Operating Agreement changed the payout for removal "other than for cause" to essentially parallel the payout of Stephen's letter-agreement.

contract, violation of the covenant of good faith and fair dealing, fraud, retaliation, tortuous interference with contracts, and breach of fiduciary duty. In an opinion appealing Magistrate Judge Mark Falk's denial of the appointment of a custodian, The Honorable Judge Lifland, U.S.D.J., determined that the Operating Agreement was governed by Delaware Law, stating that "the parties freely entered into an Operating Agreement and selected Delaware law to govern all disputes arising therefrom." Hopkins v. Duckett, No. 02-5589, 2005 WL 1262907, at *4 (D.N.J. May 27, 2005).

In a second opinion in the case, Judge Lifland granted Nightingale summary judgment terminating Stephen's ERISA claim, finding that Stephen's relationship with Nightingale was governed by a Services Agreement specifically naming him an independent contractor (similar to the Services Agreement at issue in this case). Stephen thus did not qualify as an employee under ERISA. Hopkins v. Duckett, No. 02-5589, 2006 WL 3373784 (D.N.J. Nov. 21, 2006). With the federal cause of action concluded, the federal court declined to exercise jurisdiction over the remaining state claims. Stephen re-filed in the Superior Court of New Jersey, and the Hon. Peter E. Doyne, P.J.S.C. (Ch.) decided Stephen's minority shareholder oppression claim. Hopkins et al. v. Duckett et al., Civ. No. BER-C-449-06 (N.J. Super. Ch., May 25, 2007). Judge Doyne determined that Nightingale was formed under the laws of Delaware and the parties chose to have Delaware law govern their disputes arising out of the Operating Agreement. Id. Stephen's claims for minority shareholder oppression were dismissed because Delaware law governed and Delaware did not recognize a cause of action for minority shareholder oppression. Id.

Defendants allege that in Fall 2003, Plaintiffs sought to change the Services Agreement to discriminate against Douglas, by providing a rigid confidentiality clause, giving Nightingale sole

discretion over various issues, and creating an easier method to find breach of the Services Agreement to allow removal for cause. Douglas met with Plaintiffs Hoffmann and Neidhart in November-December 2003 in an attempt to resolve these issues, but Plaintiffs stated that Douglas' relationship with the remaining members was damaged beyond repair and sought consensual removal from Douglas. Defendants claim that Plaintiffs began acting oppressively towards Douglas and on January 27, 2004 issued notice of a meeting to take place on February 10, 2004 to vote on an amendment to the Operating Agreement which would provide that if any consultant rejects an amendment to the Services Agreement, he would no longer be permitted to provide services. Countercl. at ¶79.

Defendants allege that on February 5, 2004, Douglas was contacted by a prospective client, with whom he began negotiating an engagement letter. Plaintiffs allegedly notified Douglas that he no longer had authority to negotiate on behalf of Nightingale, and Plaintiffs subsequently enacted the proposed amendment to the Operating Agreement which terminated the Services Agreement for any consultant who did not use the new form of agreement. Defendants allege that Douglas represented to Plaintiffs that he would use the new engagement letter form if they would reinstate him, but that if Plaintiffs did not respond, this would be viewed as constructive termination without cause, and Douglas would offer his own services to the prospective client. Countercl. at ¶ 89. Without responding, Plaintiffs issued notice of a meeting on February 23, 2004 to consider removal of Douglas, and Plaintiffs filed suit against Defendants. Id. at ¶¶ 90-91. Douglas billed Nightingale through February 10, 2004. Id. at ¶ 93.

In their counterclaim, Defendants assert claims against Plaintiffs for minority shareholder oppression (Count One), breach of contract (Count Two), wrongful misconduct (Count Three),

fraud and misrepresentation (Count Four), breach of fiduciary duty (Count Five), breach of implied covenant of good faith and fair dealing (Count Six), retaliation (Count Seven), breach of duty of loyalty (Count Eight), negligent misrepresentation (Count Nine), intentional interference with contractual relations (Count Ten), tortuous interference with prospective economic advantage (Count Eleven), unjust enrichment (Count Twelve), accounting (Count Thirteen), and wrongful termination (Count Fourteen).

Plaintiffs move to dismiss Counts One, Three, Four, Seven and Fourteen for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Defendants cross-move to compel the release of funds[6] and for leave to amend the counterclaim should the fraud claim be found deficient. These motions are presently before the Court.

## II. Standard of Review

To survive a Rule 12(b)(6) Motion to Dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it is required to accept as true all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)). In

[6] In their cross-motion, Defendants allege that under the Operating Agreement, Nightingale must repurchase Douglas' shares for $112,263, and reimburse Defendants' administrative and marketing services ($28,882.36) as well as expenses ($4,462.50) incurred on Nightingale client assignments.

evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents. Pension Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1992).

The parties dispute which law governs the various claims currently before the court. A federal court sitting in a diversity action applies the choice-of-law rules of the forum state. Klaxon Co. V. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Gen. Ceramics, Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647, 652 (3d Cir. 1995). Thus, New Jersey law controls the choice of law analysis here. New Jersey will enforce choice of law provisions in a contract, unless there is a conflict with public policy. Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 331 n. 21 (3d Cir. 2001).

## III. Analysis

### A. Minority Shareholder Oppression (Count One)

Count One of Defendants' counterclaim asserts a cause of action based on "Minority Shareholder Oppression," essentially alleging that the members of Nightingale took oppressive actions against Douglas and deprived him of his rights as a member of the company. Plaintiffs argue that this claim arises out of Douglas' status as a member under the Operating Agreement, which contains an express provision stating that Delaware law governs disputes relating to the Agreement. Because Delaware does not recognize a cause of action for minority shareholder oppression, Plaintiffs' argue that this count should be dismissed.

The court will honor a private parties' contractual choice-of-law provision unless one of

two situations applies: 1) the state law chosen has no substantial relationship to the parties or the transaction, or 2) if application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in determination of a particular issue and the law of that state would otherwise apply. Prudential Ins. Co. of America v. Nelson, 11 F. Supp. 2d 572, 578 (D.N.J. 1998).

It is undisputed that the parties to this case entered into the Operating Agreement unanimously, and that the Agreement by its own terms was governed by Delaware law. The parties to the contract were all sophisticated businessmen, and there is no reason to believe, nor do the Defendants suggest, that the agreement was entered into by fraud, or duress. Additionally, Defendants state, "Counterclaimant Hopkins' claims for minority shareholder oppression arise from [Plaintiffs'] conduct following Counterclaimant Hopkins' refusal to acquiesce in decisions that violated the Operating Agreement and forced the retirement of Stephen J. Hopkins." Defs' Br. at 7. The minority oppression claim arises from the business relationship of the members of Nightingale. That relationship was governed by the Operating Agreement.

Defendants concede that Delaware has a relationship to Nightingale, but they contend that New Jersey has a greater relationship to the parties in this case, and that the public policy of the state protects minority shareholders. The parties in this case freely chose Delaware as the state of incorporation for Nightingale, which gives Delaware a substantial relationship to the case. See O'Brien v. Virginia-Carolina Chemical Corp, 44 N.J. 25, 39 (1965) (noting that courts are reluctant to interfere in the "internal affairs" of a corporation of a sister state when a dispute arises between the corporation and its shareholders). Moreover, New Jersey has no greater interest in this case than does Delaware. While New Jersey does have an Oppressed Minority

Shareholders Act, N.J.S.A. 14A:12-7(1)-(10), that fact alone does not override the parties freely chosen application of Delaware law. The cases Defendants cite in support of this 'greater interest' argument are distinguishable, as each involved contracts without choice-of-law provisions. See Francis v. United Jersey Bank, 87 N.J. 15 (1981); Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385 (Law. Div. 1999).

The opinions of Judge Lifland and Judge Doyne applying Delaware law to prior disputes involving very similar claims at issue in this case are persuasive. See Hopkins v. Duckett, No. 02-5589, 2005 WL 1262907 (D.N.J. May 27, 2005); Hopkins v. Duckett et al., Civ. No. BER-C-449-06 (N.J. Super. Ch., May 25, 2007). While Defendants are correct that res judicata does not apply here because the parties to those prior actions were not identical, both the federal and state courts determined that the same Operating Agreement should be governed by Delaware law, notwithstanding the existence of New Jersey statutes on minority shareholder oppression.

For these reasons, Delaware law controls Count One. Delaware does not have a statutory cause of action for minority shareholder oppression. Moreover, the Delaware Supreme Court has refrained from applying remedies for alleged oppression, finding that a person buying into a minority position can bargain for certain protections. See Nixon v. Blackwell, 626 A.2d 1366, 1380 (Del. 1993). Plaintiffs' motion to dismiss Count One of Defendants's counterclaim will be granted.

**B. Wrongful Misconduct (Count Three)**

In Count Three of the counterclaim, Defendants assert a claim for "wrongful misconduct" based on Douglas' removal from Nightingale. The Count alleges that Defendants were 'constructively removed without cause' and further claims that under the terms of Nightingale's

Operating Agreement, Nightingale is obligated to repurchase Douglas' shares, and pay him 24 months of distributable cash contributions. This claim is explicitly based on the Operating Agreement and on Defendant's removal from the company. Thus, for the reasons set forth above regarding disputes stemming from the Operating Agreement, Delaware law controls this claim.

Plaintiffs contend that Defendants are alleging that Nightingale failed to perform under the contract and therefore, this 'wrongful misconduct' is nothing more than a restatement of the breach of contract claim. Defendants have not disputed this point. The court also notes that the claim substantially overlaps with Defendant's cross-motion for release of funds. Defendants offer no support at all in their brief for the instant claim, stating only that "application of Delaware and Connecticut law would be contrary to the fundamental policy of New Jersey which seeks to protect its residents from minority shareholder oppression, wrongful misconduct, retaliation, and wrongful termination." Def's Br. at 12. Defendants have not identified any source of law, common or statutory, for a 'wrongful misconduct' cause of action under New Jersey or indeed any other state's law.

Defendants have failed to identify any law in Delaware to support this cause of action, and because Defendants do not dispute Plaintiffs' argument that this count simply restates the essence of the breach of contract claim, Plaintiffs' motion to dismiss Count Three of the counterclaim will be granted. The factual wrongs alleged fall within the breach of contract count.

**C. Fraud and Misrepresentation (Count Four)**

Count Four of the counterclaim asserts a claim against Plaintiffs for "Fraud and Misrepresentation" relating to enforcement of the Operating Agreement and inducement to enter

into the Amended Agreement. Plaintiff moves to dismiss this claim under Fed. R. Civ. P. 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading requirement for fraud has been universally applied under state and federal law. See Kronfeld v. First Jersey Nat. Bank, 638 F.Supp. 1454, 1462 (D.N.J. 1986). Rule 9(b) requires the factual background that would accompany the "first paragraph of any newspaper story"- that is, the "who, what, when, where, and how of the events at issue." In re Rockefeller Center Properties, Inc. Securities Ligation, 311 F.3d 198, 217 (3d Cir. 2002) (internal citation omitted). Delaware courts have noted that simply stating that the "defendant knew or should have known is not adequate for a pleading of fraud." See Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies, Inc., 854 A.2d 121, 143-44 (Del. Ch. 2004). See also Iotex Communications, Inc. v. Defries, No. 15817, 1998 WL 914265 (Del. Ch. Dec. 21, 1998)("A breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party never intended to perform.")

It has not been clearly articulated which state's law governs this claim. The fraud claim seems to derive from the Operating Agreement (and indeed, Plaintiffs have argued that this claim is again just a reconstituted breach of contract claim). While the Court is inclined to apply Delaware law to a claim that concerns the relationship of the Nightingale members for the reasons stated above, it is unnecessary to decide that issue at this time. Common law fraud in Delaware and New Jersey is remarkably similar and the Court finds that Defendants have not

stated a fraud claim with the requisite particularity under either formulation.[7]

Count Four generally refers to all paragraphs 1 through 98 of the Counterclaim. The only specific representations mentioned are the 'promise' that Section 16.3 of the Restructured Operating Agreement would be enforced by the Plaintiffs in good faith, and that certain other unnamed misrepresentations induced Plaintiffs into executing the May 2001 Restructured Operating Agreement. Defendants have not met the 'who, what, when, where and how' requirements of Rule 9(b). They point to no specific paragraph of the counterclaim or specific misrepresentation made regarding Section 16.3 of the Operating Agreement. In fact, the paragraphs relating to that amendment (¶¶52-60) specifically state that Douglas voiced his disagreement with Plaintiffs' representations at that time. No specific misrepresentation is identified that induced Defendants to enter into the May 2001 Amendments. Defendants have not sufficiently plead the individual elements of fraud under either New Jersey or Delaware law, and the motion to dismiss Count Four of the counterclaim will be granted.

Defendants move in their cross-motion for leave to amend the counterclaim if the Court finds the fraud count deficient. Courts in this Circuit will generally grant leave to amend a pleading which fails on Rule 9(b) grounds. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1435 (3d Cir. 1997). Here, there would be no prejudice to the non-moving party

[7] Under New Jersey law, a legal fraud is "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144-45 (3d Cir. 2001) (internal citation and quotation marks omitted). Under Delaware Law, the elements of common law fraud are: "1) a false representation, usually one of fact made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." Schmuesser v. Schmuesser, 559 A.2d 1294, 1297 (Del. 1989); State ex rel. Brady v. Publishers Clearing House, 787 A.2d 111, 116 (Del. Ch. 2001).

because discovery has not been completed. Thus, although Defendants have failed to state a claim with sufficient particularity under Rule 9(b), the Court will grant Defendants leave to amend the counterclaim for fraud, provided that an amended pleading is filed within twenty (20) days of this opinion, so there is no significant delay in case management.

**D. Retaliation (Count Seven)**

Defendants bring a claim for retaliation in Count Seven, alleging that after Douglas confirmed his intention to work for Plaintiffs and insisted on seeking the advice of council, Plaintiffs coerced, intimated and threatened him, and interfered with his lawful rights. Countercl. ¶ 123. Once again with respect to this claim, the Defendants offer no argument against dismissal beyond stating that it is the fundamental policy of New Jersey to protect its citizens against retaliation. Defendants offer no statutory or common law support from any state for the claim.

In their motion to dismiss, Plaintiffs argue that Delaware law should apply to this claim as it arises out of the Operating Agreement, but in the reply brief, Plaintiffs argue that Connecticut law should apply because the claim arises out of the Services Agreement between Nightingale and DHA. Because Count Seven specifically mentions Defendants' desire to 'work for' Plaintiffs and complains of being retaliated against for insisting on seeking legal advice, this claim on its face relates to the employment relationship Hopkins had with Nightingale. That relationship was governed by the Services Agreement which was freely entered into and contained an express choice of law provision applying Connecticut law to all disputes arising therefrom. This claim will be dismissed without prejudice because Defendants have failed to provide any legal grounds or set forth any elements for the cause of action; if, however, Defendants can state a legally cognizable claim for retaliation under Connecticut law, they may

move to amend their counterclaim within 20 days of this opinion and order, citing Connecticut case-law in support of such a cause of action, and enclosing the proposed amended Count for retaliation.

**E. Wrongful Termination (Count Fourteen)**

In Count Fourteen, Defendants allege that Plaintiffs wrongfully terminated Douglas Hopkins. Countercl. ¶ 144. Plaintiffs argue that Connecticut law should apply to this claim under the Services Agreement which specifically provides that Hopkins was an independent contractor and not an employee. Pls.' Br. at 31. Further, Plaintiffs assert that Nightingale's principal place of business is in Connecticut, and the members held meetings in that state. Defendants contend that notwithstanding the Services Agreement, New Jersey courts will only enforce a choice of law provision if it does not violate the fundamental public policy of New Jersey (which seeks to protect employees from wrongful termination). Defs' Br. At 14-15. Because Plaintiffs brought suit in New Jersey, and Douglas resides and did most of his work from his home in New Jersey, Defendants argue that New Jersey law should apply.

As stated above, New Jersey courts will enforce a choice of law provision in a contract, unless there is a conflict with public policy. Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 331 n. 21 (3d Cir. 2001). Defendants do not allege that they entered into this contract through fraud or duress, and furthermore, there is no conflict with public policy because Connecticut law recognizes a cause of action for 'wrongful discharge'. See Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 480 (Conn. 1980). Thus, Connecticut law controls this

claim.[8] See Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 614 (D.N.J. 2001) ("[i]t is well-established in New Jersey that claims of a New Jersey resident, relating to his out-of-state employment, are governed by the law of the state in which that New Jersey resident is employed.") (internal citation omitted)

While Connecticut law recognizes a tort cause of action for wrongful discharge in violation of an important public policy, a plaintiff must first establish that he was an employee. See Tomlinson v. Board of Educ. of City of Bristol, 226 Conn. 704, 730, 629 A.2d 333, 347 (Conn. 1993) ("[t]he right to recover in tort for wrongful discharge extends only to employees at will.") (internal citation omitted). In the context of discussing a Connecticut employment statute, the Supreme Court of Connecticut has stated

> [t]he determination of the status of an individual as an independent contractor or employee is often difficult ... and, in the absence of controlling considerations, is a question of fact. It has long been established that the fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.

Tianti ex rel. Gluck v. Willaim Raveis Real Estate, Inc., 231 Conn. 690, 696-97, 651 A.2d 1286 (1995). The parties dispute whether Douglas can be considered an employee, despite the terms of the Services Agreement. Because this issue involves questions of fact (including Nightingale's right to control Douglas, as well as the nature of the work relationship, the method of payment, employee benefits, tax treatment, etc.), the claim is not amendable to determination

---

[8]Plaintiffs argue that this claim must be dismissed under Connecticut law because Defendants have not properly plead 'wrongful discharge' as opposed to 'wrongful termination'. In accordance with the liberal pleading standards of Federal Rule of Civil Procedure 8(a), Defendants counterclaim will not be dismissed on this basis.

at the motion to dismiss stage. Therefore, Plaintiffs' motion to dismiss Count Fourteen of the counterclaim will be denied.

**F. Defendants' Cross-Motion for Release of Funds**

Defendants cross-move for the release of funds "for the full value of [Douglas'] capital account upon the date of termination, payments outstanding for administrative and marketing services performed on behalf of Nightingale, and for expenses and services incurred on behalf of Nightingale." Defs' Br. at 24. Defendants cite to specific provisions of the Operating Agreement which state that the capital account is due whether or not a member is removed for cause.

Plaintiffs dispute Defendants' entitlement to this money as well as the amounts claimed. Plaintiffs argue that all monies due were satisfied by the disbursement of $2,500 to Defendants on March 30, 2004 (a check which was never cashed by the Defendants), and that the capital account is part of a reserve fund which has been properly retained. Furthermore, Plaintiffs argue that Douglas cannot recover for his expenses on the Swank account, as he allegedly breached his contract with Plaintiffs when he took the potential client from Nightingale. Defendants also listed different amounts due for services and expenses in their opposition and reply briefs. See Pls' sur-reply Br. at 3.

As there are issues of fact with respect to the amount of monies due to the Defendants at this time, Defendants cross-motion for the release of funds will be denied because its merits cannot be decided until discovery has been completed.

## IV. Conclusion and Order

For the reasons set forth above, Plaintiffs' motion to dismiss Counts One, Three, Four,

and Seven of Defendants' counterclaim is **GRANTED**. Plaintiffs' motion to dismiss Count Fourteen is **DENIED**. Defendants' cross-motion for release of funds is **DENIED**, and Defendant's cross-motion for leave to amend the counterclaim with respect to Count Four (Fraud) is **GRANTED**. Defendants may also move to amend Count Seven if they can state a legally cognizable claim for retaliation under Connecticut law. Any such motion, and amended pleading, must be filed within twenty (20) days of this opinion and order. It is **SO ORDERED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.